## UNITED STATES LIABILITY INSURANCE CO., Plaintiff,

v.

## Livingstone R. SELMAN and Robin Razza as Mother and Next Friend of Carol Ann Razza, Defendants.

Civ. A. No. 92–11572–JLT.

United States District Court,
D. Massachusetts.

March 28, 1995.

Stephen J. Andrick, Mark P. Bailey, and Debra A. Joyce, Morrison, Mahoney & Miller, Boston, MA, for plaintiff.

Kenneth H. Soble, Chestnut Hill, MA, Clyde D. Bergstresser, Stahlin, Bergstresser & Cole, P.C., and Jeremy Stahlin and Angela M. Vieira, Stahlin & Bergstresser, Boston, MA, for defendants.

## *MEMORANDUM*

TAURO, Chief Judge.

Plaintiff United States Liability Insurance Company ("U.S. Liability") seeks a determination of its duty to indemnify and defend its insured, Livingstone Selman, who is a defendant in a case pending before the Suffolk County Housing Court. That suit, brought by Robin Razza, as mother and next friend of Carol Ann Razza, alleges that Carol Ann Razza was poisoned by lead paint while a tenant in Selman's apartment building.

### I. FACTS

The facts that frame this controversy are not in dispute. In May of 1983, while living in an apartment building owned by Selman, Robin Razza gave birth to a daughter, Carol Ann Razza. Some eighteen months later, in October of 1984, the baby girl was diagnosed as suffering from lead poisoning.

When a state inspection identified the Razzas' apartment as the source of exposure to lead-based paint, Selman moved the Razzas to another apartment within the same complex. This move occurred in early March of 1985. Carol Ann's condition, however, did not improve, and tests revealed that the Razzas' new apartment also contained lead-based paint. Eventually, in September of 1986, Robin and Carol Ann Razza moved out of Selman's building.

On the basis of Carol Ann's exposure, Robin Razza filed suit against Livingstone Selman in Suffolk County Superior Court. Selman petitioned his insurers for defense and indemnification, and this lawsuit ensued.

### II. ANALYSIS

In seeking to disclaim liability for Carol Ann's injuries, U.S. Liability insists that cov-

erage under its policies did not begin until May 4, 1985—well after the diagnosis of Carol Ann's condition. On this basis, it claims that the burden of defense and indemnification should fall solely on Mutual Fire, Marine & Inland Insurance, Selman's insurer prior to May 4, 1985.[1]

[1] As a threshold matter, the court notes the respective burdens of proof in this declaratory judgment action. Selman, the insured, bears the initial burden of establishing an injury within the policy period. If and when the plaintiff makes that showing, the burden shifts to U.S. Liability, who must prove the relevant exclusion. *See generally, Camp Dresser & McKee, Inc. v. Home Insurance Company*, 30 Mass.App.Ct. 318, 321, 568 N.E.2d 631 (1991) ("Once basic risk coverage is established, the burden shifts to the insurer to prove the applicability of any exclusion to coverage ...").

After extensive discovery and testimony from the defendants' medical expert, the court finds that at least a portion of Carol Ann's damages were suffered as a result of exposure that occurred within U.S. Liability's policy period. To this extent, the insured has met its burden of establishing "basic risk coverage."

[2] But, U.S. Liability has advanced two arguments disclaiming liability for injuries that occurred after their policy began. First, U.S. Liability claims that Selman should not be allowed to obtain coverage for an injury that was certain to occur. Second, U.S. Liability argues that the relevant injury in this case was diagnosed before their policy came into effect, and that subsequent "post-manifestation" damages do not fall within the scope of their policy.

U.S. Liability's first argument is based on the maxim that an insured cannot obtain insurance against an event that has already begun. Citing a recent decision of the Supreme Judicial Court, U.S. Liability argues that Selman could not have purchased insurance against an illness that had already been diagnosed. *See SCA Services, Inc. v. Transportation Insurance Company*, 419 Mass. 528, 532–33, 646 N.E.2d 394, 397 (1995). Based on the evidence before the court, however, it is clear that a significant portion of Carol Ann's injuries were not a "known loss" when U.S. Liability's coverage began.

Carol Ann's injury had been diagnosed by May 4, 1985, and Selman may have known that the effects of this injury would extend into the new policy period. There is no evidence, however, that Selman knew that Carol Ann would continue to ingest lead paint in the new policy period.[2] Thus, while it was certain that Carol Ann would continue to suffer the effects of her previous ingestions, it was by no means clear that her condition would worsen after May 4, 1985. To the extent that Carol Ann's injuries arose out of ingestions after that date, Selman was not insuring against a "known loss."

■ U.S. Liability also argues that Carol Ann suffered a single injury for insurance purposes, and that this injury "occurred" outside their policy period. Citing *Saab v. National Union Fire Insurance Company*, CA 92–1548–Z (D.Mass, 1993), U.S. Liability argues that despite the continuing exposure, the injury "occurred" before their policy came into effect.

U.S. Liability's position, however, is inconsistent with testimony given by the defendant's medical expert, Dr. John W. Graef.[3] While Carol Ann's blood levels did not return to normal between ingestions, Dr. Graef's

---

1. Selman's property was originally insured by the Mutual Fire, Marine & Inland Insurance Company. Mutual Fire issued four consecutive one-year policies between May 4, 1981 and May 4, 1985. Upon termination of the last policy issued by Mutual Fire, Selman switched his coverage to U.S. Liability. The parties agree that U.S. Liability's coverage began on May 4, 1985.

    Mutual Fire is not a party to this suit, and the court expresses no opinion as to Mutual Fire's duties and obligations towards Livingstone Selman.

2. Although Selman was aware of the presence of lead paint in the Razzas' new apartment, U.S. Liability does not allege, much less prove, that Selman misrepresented this fact in applying for his coverage.

3. The court notes that Judge Zobel's brief endorsement in *Saab* did not specifically address the possibility that the claimant had continued to ingest paint in the new policy period.

testimony indicated that Carol Ann's condition was the result of repeated ingestions of lead-based paint. Specifically, Dr. Graef testified that periodic "spikes" in the toxicity of Carol Ann's blood were indicative of specific "big meals" of paint chips. (Graef Testimony, 37:16—38:16). This testimony, along with medical records submitted by the parties, indicate that Carol Ann suffered discrete incidents of lead poisoning within the new policy period. (Graef Testimony, 21:2—22:14).

In the cross-examination of Dr. Graef, U.S. Liability stressed the fact that Carol Ann's lead count spiked to toxic levels throughout the several policy periods. (Graef Testimony, 39:4–11). This suggests that U.S. Liability's argument rests on the fact that Carol Ann's lead levels did not return to normal between ingestions of lead paint. But, there is a clear nexus between ingestion of paint chips and the "spikes" in the toxicity of Carol Ann's blood. This establishes injury within the policy period, as opposed to grounds for exclusion of coverage. *See Scottsdale Ins. Co. v. American Empire Surplus Lines Ins. Co.*, 811 F.Supp. 210 (D.Md.1993); *General Accident Ins. Co. of America et al. v. Idbar Realty Corp., et al.*, 163 Misc.2d 809, 622 N.Y.S.2d 417 (N.Y.Sup.Ct.1994).

## III. CONCLUSION

Carol Ann Razza suffered multiple discrete and recognizable occurrences of lead poisoning. Exposure occurred both before and after U.S. Liability's policy began. The court finds that U.S. Liability is entitled to the declaration it seeks only with respect the portion of Carol Ann's damages that are attributable to lead paint ingested before May 4, 1985. U.S. Liability's motion for summary judgment is granted to the extent that in involves the portion of Carol Ann's injuries attributable to ingestions that occurred before May 4, 1985, and denied in all other respects.