George W. McLAUGHLIN, Plaintiff,

v.

David W. REYNOLDS, Great Northern Nekoosa Employee Protection Plan, Great Northern Nekoosa Corporation, and Georgia–Pacific Corporation, Defendants.

Civ. No. 94–0174–B.

United States District Court,
D. Maine.

May 17, 1995.

John W. McCarthy, Rudman & Winchell, Bangor, ME, for plaintiff.

Richard G. Moon, Moon, Moss, McGill & Bachelder, P.A., Portland, ME, for defendants.

Forrest W. Hunter, Alston & Baird, Atlanta, GA, for defendant Great Northern Nekoosa and Georgia–Pacific.

Randall A. Constantine, Elrod & Thompson, Atlanta, GA, for defendant GNN, Employee Protection Plan and David Reynolds.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff George McLaughlin retired voluntarily from his job at a Georgia–Pacific mill in East Millinocket, Maine on August 2, 1991.

He now brings suit alleging that he was denied vacation benefits owed him pursuant to his company's Employee Protection Plan ("EPP" or "the Plan"). That denial, McLaughlin contends, violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), the Maine Employment Practices Act, 26 M.R.S.A. § 626, and the actual terms of the EPP.

Before the Court are several pending motions. David Reynolds, the individual who determined that McLaughlin was ineligible for vacation benefits, and Defendant Plan, jointly move for summary judgment alleging that the determination was proper pursuant to the terms of the plan, ERISA, and Maine law. In a separate motion for summary judgment, Great Northern Nekoosa Corporation ("GNN") and Georgia–Pacific Corporation advance the same arguments. In addition, they assert that they are not subject to suit because they are not proper parties with respect to McLaughlin's ERISA claim. Further, McLaughlin seeks summary judgment on his claim under the Maine Employment Practices Act. Finally, both McLaughlin and Defendants Reynolds and the Plan filed memoranda at the Court's request on the issue of whether Plaintiff is entitled to a trial by jury with respect to his ERISA claim.

### I. Background

McLaughlin was employed by GNN, its subsidiaries, or Georgia Pacific, from 1961 until his voluntary retirement in August 1991. From 1985 through 1987, McLaughlin was deeply involved in an intense modernization project at the East Millinocket Mill where he worked. As a result of that involvement, McLaughlin and others worked long hours and were unable to use a large portion of their available vacation time. Accordingly, the Mill Manager permitted salaried employees such as McLaughlin to carry over standard vacation time that they were unable to use. The employees were allowed to bank such missed vacation time at a rate of two or three weeks a year and were to be compensated for that time with a cash payment upon their retirement or resignation. In addition, McLaughlin and these employees were permitted to tally their overtime hours

and take compensatory time off for hours employed in excess of a normal work week. McLaughlin terms these tallied hours "Overtime Earned Vacation Compensation" ("OEVC"). McLaughlin recalls being told by his superiors that he could not recover cash for OEVC time that he did not take as compensatory time off.

In March 1990, Georgia–Pacific acquired a majority of the then outstanding shares of GNN's common stock. Five months prior to that takeover, GNN adopted the Employee Protection Plan, the employee welfare benefit plan under which McLaughlin seeks to recover his vacation benefits. The purpose of adopting the Plan was to protect company employees in the event of a takeover: to "provide reasonable financial protection to all full-time salaried employees who are employed by the Company at the time of a Change of Control...." (Reynolds Aff. Ex. A. § A.) The pertinent provisions of the Plan as they relate to this litigation are as follows:

§ B. *Responsibility* ... The vice president, employee relations, GNN, is responsible for interpretations of this plan.

.   .   .   .   .   .

§ D. *Plan Implementation* The Employee Protection Plan shall provide benefits only if there is a Change of Control and shall apply to a Covered Employee whose employment is terminated within two years of such Change of Control under the following circumstances:

1. The employee experiences a material reduction in responsibilities or authority or reduction in salary or benefits, and the employee voluntarily terminates ...

.   .   .   .   .

§ E. *Plan Benefit* ...

4. The severance benefit described in the Plan shall be payable in addition to, and not in lieu of, all other accrued or vested benefits, rights, options, or other forms of compensation which may be owed to an employee following termination, including but not limited to, accrued vacation....

§ F. *Full Settlement and Indemnification* ... If a Covered Employee in good faith institutes any legal action in seeking to obtain or enforce ... the validity or enforceability of any right or benefit provided by this Plan, the Company will pay for all reasonable legal fees and expenses actually incurred by such employee.

.   .   .   .   .

§ I. *Governing Law* The validity, interpretation, construction and performance of the Plan shall in all respects be governed by the laws of the United States and, to the extent not preempted by such laws, by the laws of the State of Maine without regard to its conflict of laws rules.

(Reynolds Aff. Ex. A.)

## II. Discussion

It is not in dispute that: there was a change in control when Georgia–Pacific acquired a majority of GNN common shares of stock; McLaughlin voluntarily retired within two years of the change of control; and McLaughlin was a covered employee under the EPP at the time of the change of control. (*See id.* § D.) The parties do dispute, however, whether McLaughlin suffered a material reduction after the change of control, either with respect to his responsibility on the job or his vacation benefits. (*See id.* § D.(1).)

### A. McLaughlin's Position

McLaughlin asserts that he suffered both a material reduction in his job responsibilities and his vacation benefits. With respect to his job responsibilities, McLaughlin alleges that for sixteen months, starting in April 1989, he assumed significant responsibilities because the Mill lacked a General Production Superintendent. (Pl.'s Opp'n Reynolds' Mot. Summ.J. at 6.) In August 1990, after the Georgia–Pacific takeover, the company hired a permanent production manager and, as a result, McLaughlin's job responsibilities decreased. (*Id.* at 7.) "[A]fter the change of control, not only did Mr. McLaughlin lose material additional responsibilities and authority that he had had for sixteen months after April of 1989, but he also lost material responsibilities and authority that he had had

... prior to April of 1989." (*Id.* at 8–9 (citing McLaughlin Aff. ¶ 26).)

With respect to his vacation benefits, McLaughlin asserts that after the change in control, the new Mill manager, installed after the change of control, announced that any unused, accumulated vacation time not taken before December 31, 1990 would be forfeited. (*Id.* at 10 (citing Reynolds Aff. Ex. R.).) McLaughlin alleges that this change in policy caused him to lose 19 weeks of regular banked vacation time as well as 51 weeks of OEVC vacation time he otherwise could have taken after December 31, 1990. (*Id.* at 11.) In light of these alleged reductions in responsibilities and benefits, McLaughlin contends that the EPP requires that he be paid for his owed, accrued vacation time.

## B. Defendants' Positions

Defendants Reynolds and the EPP respond that during the period in which McLaughlin purportedly assumed greater job responsibilities, it was Mr. Lee Bingham, and not McLaughlin, who performed the duties and responsibilities of the vacant managerial position. (Reynolds and EPP's Mem. Supp.Mot.Summ.J. at 15.) "[P]laintiff merely performed routine matters for Mr. Bingham on the few occasions he was away...." (*Id.*) Accordingly, Reynolds and the EPP argue that once the company hired a permanent production manager, McLaughlin's responsibilities did not materially decrease.

As to McLaughlin's alleged decrease in vacation benefits, Reynolds and the EPP argue simply that the "alleged OEVC was accrued from 1985 through 1987 ... Whatever claims plaintiff may have for OEVC relate to a practice that predated the Change of Control and had been eliminated as of the Change of Control." (*Id.* at 19.) They assert in addition that Plaintiff admits "that he was *paid* in full for those nineteen weeks of regular paid vacation after his resignation." (Reynolds and EPP's Reply at 4.)

■ Given the parties' conflicting assertions and characterizations, it is clear to this Court that there are material questions of fact with respect to whether McLaughlin suffered either a reduction in benefits or a reduction in job responsibilities. The Court's inquiry, however, is not over. Despite the factual questions that remain, Defendants all argue that they are entitled to judgment, in any event, because Reynolds's determination as to McLaughlin's eligibility was not arbitrary and capricious.

## C. Standard of Review

■ The standard of review in an ERISA action is determined according to the terms of the plan under which the benefits were allegedly denied. Thus, a "district court reviews ERISA claims arising under 29 U.S.C. § 1132(a)(1)(B) *de novo* unless the benefit plan in question confers upon the administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 583 (1st Cir.1993) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)). *See also Allen v. Adage, Inc.,* 967 F.2d 695, 697 (1st Cir.1992) ("Except in those cases where a different level of scrutiny is indicated in the benefit plan itself, the district court considers a denial-of-benefits challenge afresh, without deferring to the employer's interpretation of the plan." (citation omitted)). Thus, "a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review." *Rodriguez–Abreu,* 986 F.2d at 583 (citing *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir.1989)).

■ In this case, the EPP states that "[t]he vice president, employee relations, GNN, is responsible for interpretations of this plan." (Reynolds Aff. Ex. A. § B.) Reynolds occupied the position of vice president, employee relations. He and the EPP argue that Section B of the plan clearly provided him with discretionary authority. Therefore, they argue that the determination as to McLaughlin's eligibility necessarily must be reviewed under an arbitrary and capricious standard. The Court is not so persuaded. The plan does not "clearly grant discretionary authority" to Reynolds to make ultimate *eligibility* determinations. *Rodri-*

*guez–Abreu,* 986 F.2d at 583. *Compare Curtis v. Noel,* 877 F.2d 159, 161 (1st Cir.1989) (plan in question specified that the "administrator, among many other responsibilities, shall determine 'which employees are eligible to participate in the Plan,' and shall 'provide all parties dealing with the Plan an interpretation of Plan provisions on request.'" (citing the Defendant's Plan in that case)).

The Court is also mindful of the fact that "[n]onambiguous terms or language in an ERISA … plan must be given 'their usual and ordinary meaning.'" *Kiley v. Travelers Indem. Co. of Rhode Island,* 853 F.Supp. 6, 12 (D.Mass.1994) (citations omitted). Applying that principle to this case, the court finds no language, nonambiguous or otherwise, that suggests that ultimate eligibility determinations are subject to a deferential standard of review. Indeed, giving the terms of the plan their ordinary meaning suggests at most that Reynolds may have possessed discretionary authority solely to interpret plan provisions. Accordingly, the Court concludes that Reynolds' decision that McLaughlin is not eligible for benefits under the EPP is entitled to *de novo* review. In light of this conclusion, the material issues of fact that remain in this case preclude an entry of summary judgment at this stage.

**D. Scope of Review**

■ The next issue to be addressed is the extent to which the Court may consider evidence at trial that may not have been before Reynolds when he reached his determination as to McLaughlin's eligibility for vacation benefits. The First Circuit Court of Appeals has not decided whether a court, when reviewing a benefits determination, must restrict itself to the record considered by the decision-maker who interpreted the employee benefits plan. It is of course "appropriate" to limit the record in review "to the evidence [that was] before" the plan administrator when a court employs an arbitrary and capricious standard of review. *Id.* at 13–14. This Court, however, will review Reynolds' determination *de novo.* In such a

context, the Court concludes that it is more appropriate to consider additional, relevant evidence, if any, that was not before Reynolds when he denied McLaughlin's requests. *Id.; see also Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1184–85 (3d Cir.1991) and *Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir.1989). Accordingly, the presentation of evidence at trial shall not be limited by the scope of Reynolds's prior review.

**E. GNN and Georgia Pacific as Proper Parties**

■ The Court next examines Defendants GNN and Georgia–Pacific's argument that they are improper parties to Plaintiff's ERISA claim.[1] Defendants argue that "suits under ERISA to recover benefits are permitted only against the benefit plan as an entity … [and that] neither [GNN nor Georgia–Pacific] is the plan or the plan administrator." (GNN & Georgia–Pacific's Mem.Supp. Mot.Summ.J. at 9–10.) Defendants admit, however, that if "an employer is shown to control the administration of a pension plan, the employer can be a proper party to an action for benefits." (*Id.* at 9.) *See also Law v. Ernst & Young,* 956 F.2d 364, 373 (1st Cir.1992) (summary judgment inappropriate where "the 'employer may, as a matter of fact, have taken an active part in the administration of the pension plan …'" (citing *Foulke v. Bethlehem 1980 Salaried Pension Plan,* 565 F.Supp. 882, 883 (E.D.Pa. 1983))). In this case, a review of the record indicates that there are many issues of material facts that preclude an entry of summary judgment with respect to whether GNN and Georgia–Pacific exercised control over Reynolds and the EPP.

For example, Reynolds admits to being not only a vice president of employee relations but also "an officer in some of [Georgia–Pacific's] subsidiaries." (Reynolds Dep. at 3.) In addition, while the EPP was designed to protect covered employees in the event of a takeover (Reynolds Aff. Ex. A. § A.),

---

1. The Court notes that GNN and Georgia–Pacific also argue, as did Reynolds and the EPP, that the denial of benefits to McLaughlin was appropriate, as a matter of law. The Court need not address this argument anew, in light of its earlier determinations with respect to Reynolds and the EPP's Motion for Summary Judgment.

Reynolds was appointed to interpret the provisions of the EPP by the company responsible for such a takeover—Georgia–Pacific. (Reynolds Dep. at 13–14.). Reynolds also stated that in 1992, he was *"working for* [GNN] administering its program...." (emphasis added). In addition he stated that while he had a "fiduciary responsibility" to the "people" covered by the EPP, and "to the Plan," he had a similar duty with respect "to the business that supports it [ (Georgia–Pacific) ]." (*Id.* at 21.) Viewing these facts, and the rest of the record, in the light most favorable to McLaughlin, it is possible that GNN, at first, and then Georgia–Pacific, exercised control over Reynolds and the EPP. Accordingly, it would be improper to grant summary judgment on the issue of whether GNN and Georgia–Pacific are proper parties to Plaintiff's ERISA claims. Both Defendants could "be a proper party [in McLaughlin's] action concerning benefits." *Law,* 956 F.2d at 373.

### F. McLaughlin's Claim under 26 M.R.S.A. § 626

■ Defendants GNN and Georgia–Pacific further argue, in support of their Motion for Summary Judgment, that McLaughlin may not recover denied benefits under 26 M.R.S.A. § 626. McLaughlin also moves for Summary Judgment on this issue in his response to Defendants' Motion.

GNN's Vacation Plan was revised on November 30, 1989 to provide [2] in relevant part:

§ N. *Deferred Vacation* Vacation which was deferred under a prior policy will be granted the employee at the time of retirement or termination; or at the option of the department head, the employee will be paid the current monetary value of the deferred vacation.

.    .    .    .    .

§ P. *Termination of Employment* A terminated employee shall be paid for any unused and/or deferred vacation plus pro-rata vacation....

[Pl.'s Statement Mat.Facts Ex. I, E.]

GNN and Georgia–Pacific do not address these provisions. Instead, they argue that

"Plaintiff is not entitled to a cash payment upon termination for 'OEVC' time because he has admitted that the Defendants' stated policy and the express terms of his employment did not allow cash payments of 'OEVC' time to be made in lieu of paid time off." (GNN & Georgia–Pacific's Mem. at 11–12.) Plaintiff's "admission," however, consists simply of various statements made in his deposition in which he said that GNN superiors informed him that he was not entitled to cash payments as compensation for earned OEVC time and are not admissions at all.

GNN and Georgia–Pacific correctly cite *Snow v. Borden, Inc.,* 802 F.Supp. 550, 554 (D.Me.1992), for the proposition that, "under Maine law, a company's vacation policy trumps any state statutory right to such reimbursement." Accordingly, GNN and Georgia–Pacific argue that Plaintiff's admissions regarding what he believed to be the policy "trump" any statutory right upon which he relies. However, this Court finds that what McLaughlin believed to be the policy, may not in fact have been the policy. McLaughlin's memory of his supervisors' statements conflict to some degree with the revised provisions of the company's vacation plan. Specifically, those provisions could in fact countenance the paying of cash as compensation for earned OEVC time. Accordingly, there are issues of material fact as to the terms of the actual vacation policy sufficient to preclude summary judgment on this issue for Defendants.

For the same reasons, summary judgment on this issue would be improper for the Plaintiff. It is not clear, on the record now before the Court, that McLaughlin is entitled to judgment as a matter of law on his § 626 claim. Therefore, the Court denies GNN and Georgia–Pacific's Motion for Summary Judgment as well as McLaughlin's Motion for Summary Judgment on the issue of vacation benefits under 26 M.R.S.A. § 626.

### G. Right to a Jury Trial

■ Finally, the Court will address the parties' arguments with respect to whether

---

**2.** Part of McLaughlin's allegation that he suffered a reduction in benefits is based on an alleged alteration to this vacation plan after Georgia–Pacific assumed control over GNN.

McLaughlin has a right to have his ERISA claims heard by a jury. In his Amended Complaint, McLaughlin "Demands trial by jury as to all counts and issues so triable." (Am.Compl. at 9.) Defendants contend that McLaughlin's claim under ERISA must be tried before a judge, not a jury. Plaintiff responds that his ERISA claim is legal, as opposed to equitable in nature, and therefore should be tried before a jury. For the reasons that follow, the Court is not persuaded that a trial by jury is warranted in this case.

"Plaintiffs in plan-enforcement actions ... bring an action analogous to one at law only if the defendant ... admits that plaintiff is entitled to benefits." *Wilson v. Connecticut Gen. Life Ins. Co.,* 670 F.Supp. 52, 54 (D.Me. 1987). (Internal quotations and citations omitted). However, "[d]efendants here deny that Plaintiff is entitled to benefits, so no legal remedy is available." *Id.* While these cases are antithetical to a minority of vocal district court opinions, *see, e.g., Padilla de Higginbotham v. Worth Publishers, Inc.,* 820 F.Supp. 48 (D.P.R.1993) (finding a right to a jury trial in an ERISA action alleged under 29 U.S.C. § 1132(a)(1)(B)) and *Sullivan v. LTV Aerospace and Defense Co.,* 850 F.Supp. 202 (W.D.N.Y.1994) (same); the majority of district courts in the First Circuit have reached a result contrary to McLaughlin's position. *See, e.g., Strout v. GTE Prods. Corp.,* 618 F.Supp. 444 (D.Me.1985); *Berlo v. McCoy,* 710 F.Supp. 873 (D.N.H.1989); and *Turner v. Leesona Corp.,* 673 F.Supp. 67 (D.R.I.1987). Moreover, an overwhelming majority of the circuit courts have come to the same conclusion. Indeed, "each of the circuit courts that have resolved this issue has held that no jury trial is warranted." *Sullivan,* 850 F.Supp. at 206 (citing the following circuits: 3d, 4th, 5th, 6th, 7th, 8th, 9th, and 11th). This Court is unwilling, "like a salmon", to "swim upstream against a current" of cases holding that there is no right to a jury trial in actions brought under § 1132(a)(1)(B). *Sullivan,* 850 F.Supp. at 211 (internal citations and quotations omitted). Accordingly, Plaintiff's demand for a jury trial as to his ERISA claim is denied and stricken.

Plaintiff argues in addition that his other claims should be tried before a jury regardless of the Court's determination as to his ERISA claim. (Pl.'s Mem. at 20 n. 11.) (arguing that Defendants waived their right to argue otherwise due to a statement made in an exhibit submitted with their joint pretrial memorandum). The Court does not address Plaintiff's waiver argument at this time. Rather, the Court directs that, to the extent McLaughlin's jury trial rights become an issue with respect to his other claims, both parties will be given sufficient opportunity to address, by motion or otherwise, the issue at the appropriate time.

### IV. Disposition

Defendants Reynolds and the EPP's Motion for Summary Judgment is *DENIED.* Defendants GNN and Georgia–Pacific's Motion for Summary Judgment is *DENIED.* Plaintiff's Motion for Partial Summary Judgment under 26 M.R.S.A. § 626 is also *DENIED.* Finally, Plaintiff's Demand for Jury Trial of his ERISA claim is *DENIED AND STRICKEN.*

*SO ORDERED.*