**Geraldine CLEARY, Plaintiff,**

v.

**KNAPP SHOES, INC., Defendant.**

Civ. A. No. 93–12033–JLT.

United States District Court,
D. Massachusetts.

March 15, 1996.

---

Willis A. Downs, Downs and Work, Brockton, MA, Thomas M. Sullivan, Randolph, MA, for Plaintiff.

Laura J. Krims, Michael A. Fitzhugh, Fitzhugh & Associates, Boston, MA, for Defendant.

## MEMORANDUM

TAURO, Chief Judge.

## I.

## INTRODUCTION

Geraldine Cleary brings this action against Knapp Shoes, Inc. ("Knapp") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. 1132(a)(1)(B) (West 1985), seeking to recover medical expenses incurred as a result of her March 6, 1992 cerebral vascular accident. Cleary contends that Knapp's decision to deny her benefits was arbitrary and capricious.[1] The matter is now before the court at the parties' request to decide the case on the basis of the documentary record.[2]

## II.

## BACKGROUND

Cleary began working for Knapp on September 17, 1991.[3] (Def. Ex. 1). Upon com-

---

**1.** Cleary also contends that Knapp did not inform her in its initial determination letter of her right to seek administrative review. Assuming that this failure constitutes a violation of 29 U.S.C.A. § 1133 (West 1985), and assuming such a violation gives rise to a substantive remedy, Cleary was not harmed by the purported violation. At the request of Cleary's counsel, Knapp twice reviewed its initial determination. Accordingly, the court concludes that Cleary is not entitled to relief on this claim.

**2.** At a conference held on July 20, 1995, the parties represented that the court should decide whether Knapp was arbitrary and capricious based upon documents before Knapp at the time of its decision. *Transcript of July 20, 1995 Further Conference* at 2–3. The court then ordered the parties to file proposed findings of fact and memorandum in support. After reviewing the parties' submissions, the court had concerns regarding the nature of its review. On January 10, 1996, the court ordered that the parties prepare

supplemental memoranda to respond to six questions relating to these concerns. Upon review of these additional submissions, the court agreed with Knapp's assertion that review should be *de novo*. On February 27, 1996, the court informed the parties of this conclusion. The parties were further ordered to apprise the court as to (1) whether there was any additional information they wished to submit, and (2) whether they continued to seek decision by the court on the basis of the documents submitted. Both parties responded that they had no additional information and that they sought decision based on the record submitted.

**3.** The parties submitted the following documents: (1) Index of Exhibits Submitted by Knapp Shoes, Inc. ("Def. Ex. ___"); (2) Statement of Plaintiff, Geraldine Cleary In Accordance With Local Rule 26.2(A) ("Pl.Ex. A–___"); and (3) Supplemental Statement of Plaintiff, Geraldine Cleary, In Accordance With Local Rule 26.2(A) ("Pl.Ex. B–___").

mencing her employment, Cleary completed a job placement medical questionnaire, in which she noted that she suffered from hypertension and was taking the medication Vasotec to treat her condition. (Def. Ex. 4; Pl.Ex. A–1). Cleary also answered the question "Do you smoke cigarettes?" in the negative. (Def. Ex. 4).

In September 1991, Knapp provided group health insurance for eligible employees through Massachusetts Mutual Life Insurance Company (the "MassMutual Plan"). (Def. Ex. 2). The MassMutual Plan provided that an employee becomes eligible for coverage "on the first day of the calendar month coinciding with or next following the date [the employee] become[s] a qualified employee and complete[s] 2 months of continuous employment with [Knapp]." (Def. Ex. 2 at 15). Cleary, thus, became a covered employee under the MassMutual Plan on December 1, 1991. (Pl.Ex. A–9; Def. Ex. 11).

On January 1, 1992, Knapp became self-insured for health insurance for eligible employees (the "Knapp Plan"). (Def. Ex. 3 at 1). Knapp designated itself as the plan administrator of the Knapp Plan, (Def. Ex. 3 at 2), but the processing of claims was handled by the Travelers Plan Administrators of Connecticut, Inc. ("TPA"). (Def. Ex. 3 at 1; Pl.Ex. A–3).

On March 6, 1992, Cleary suffered a cerebral vascular accident, commonly referred to as a stroke. (Def. Ex. 10). She was hospitalized at Massachusetts General Hospital until March 10, 1992. (Def. Ex. 10). She suffered an exacerbation of her symptoms on April 29, 1992. (Pl.Ex. B–3). She was treated at South Shore Hospital, and was subsequently transferred to Braintree Hospital, where she received rehabilitation therapy from May 7 to May 18. (Pl.Ex. B–3). The medical bills for the treatment Cleary received relating to her stroke totalled approximately $30,000. (Pl. Exs. A–2 and A–4).

Prior to August 31, 1992, Knapp paid approximately $10,500 of Cleary's medical bills. (Pl.Ex. A–2). Notwithstanding these payments, TPA informed Cleary, by a letter dated August 31, 1992, that it had determined that the prior payments were mistakenly made because Cleary's stroke fell within the pre-existing condition exclusion. (Pl.Ex. A–3). TPA explained that "charges for [Cleary's] stroke [were] considered related" to her hypertension and that, while it would not seek reimbursement for the amounts already paid, it would not pay any further bills relating to her stroke. (Pl.Ex. A–3). The unreimbursed medical expenses equal approximately $18,000. (Pl.Ex. A–4).

Under the Knapp Plan, those employees previously covered under the MassMutual Plan who had pre-existing conditions would be excluded under the lesser of: "(1) the [MassMutual] Plan; or (2) the [Knapp] Plan (without applying [its] Pre–Existing Condition limitation)." (Def. Ex. 3 at 33). The MassMutual Plan contains the following provision regarding pre-existing conditions:

> Covered expenses may exclude "pre-existing conditions." That term means an injury or illness for which the covered person received medical care or treatment before being covered by this coverage.... Expenses due to a pre-existing condition are covered only if:
>
> 1. the expense is incurred after the person has been free of all medical care and treatment for that condition throughout a 90 consecutive day period ending on or after the date he or she become covered; or
>
> 2. if it is personal coverage, the plan member has been covered during at least 6 months of continuous active employment.
>
> The preceding exclusion does not apply to all covered persons. Those persons who were for [sic] Major Medical Benefits for an illness before December 1, 1989 are not subject to the exclusion.

(Def. Ex. 2 at 50). As applied to these facts, the MassMutual Plan is the "lesser of the plans," and, thus, whether expenses for Cleary's stroke are excluded from coverage is governed by the terms of the MassMutual Plan.

The record clearly indicates, and Cleary does not dispute, that her hypertensive condition pre-dated her employment at Knapp. Cleary acknowledged as much in her employment medical questionnaire. (Def. Ex. 4).

Cleary also does not dispute that she received treatment for hypertension shortly after she began working for Knapp. She received a prescription for Vasotec, a drug used for treating hypertension, from her primary care physician, Dr. Andrew Sullivan, on November 5, 1991, (Def. Ex. 5), and she refilled that prescription on February 17, 1992. (Def. Ex. 6).

In light of the above, the court concludes that treatment received by Cleary for hypertension was excluded under the MassMutual Plan. Cleary had not undergone a 90 day period free from hypertension treatment, nor, as of March 6, 1992, had she served as a continuous active employee of Knapp for six months following December 1, 1991.

Cleary, through counsel, objected to Knapp's decision to deny her the remaining benefits on the ground that her preexisting hypertension condition did not bar her from receiving payment for treatment of her stroke. On November 20, 1992, TPA responded to Cleary's objection. (Def. Ex. 14). TPA explained that it determined that Cleary's "condition of hypertension was preexisting" and that "[t]his diagnosis resulted in a [cerbral vascular accident] which was not covered until after the first six months of her eligibility." (Def. Ex. 14). TPA responded again to queries from Cleary's counsel on May 14, 1993, describing the evidence supporting its conclusion that Cleary's condition was pre-existing. (Def. Ex. 11).

## III.

### DISCUSSION

Knapp maintains that the language in the pre-existing condition provision of the MassMutual Plan that reads "expenses due to" requires that a subsequent illness *caused by* a preexisting condition falls within the ambit of the exclusion. As Cleary does not contest this interpretation of the pre-existing condition provision, the principal issue before the court is a factual one: whether Cleary's preexisting condition of hypertension caused her

cerebral vascular accident. Before addressing this factual question, the court must examine the nature of its review of Knapp's benefit determination and the locus of the burden of proof.

### A. Standard of Review

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court addressed the issue of the appropriate standard for evaluating benefit determinations of plan administrators. The Court held that determinations should be reviewed *de novo* except where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956.

■ The parties in this case have assumed a peculiar posture. In ERISA cases, it is generally plaintiffs who seek less deferential review of a plan administrator's decision. Here, however, Cleary requests review under the arbitrary and capricious standard, while Knapp argues for *de novo* review.[4] Whatever the reason for this odd turn, the proper inquiry for the court is whether the Knapp Plan grants discretionary authority to Knapp. For the reasons discussed below, the court concludes that it does not.

In its memorandum in support of its motion to dismiss, Knapp maintained that the Knapp Plan conferred discretion because an applicant for benefits must submit proof of loss as a condition precedent to payment. *Memorandum in Support of Defendant's Motion to Dismiss* at 8. In support of this position, Knapp relied on *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir. 1991). *Miller*, however, is inapposite. In *Miller*, the court did not find discretion from a proof of loss provision, but from the following statement in the plan:

An Employee shall be deemed to be totally disabled [and, therefore, entitled to bene-

---

4. Knapp's present position reflects a change from the view it staked out earlier in this litigation. In its October 15, 1993 motion to dismiss, Knapp contended that the benefits decision should be reviewed under the arbitrary and ca-

pricious standard. *Memorandum of Law in Support of Defendant's Motion to Dismiss* at 7–8. Knapp reiterated this position at the July 20, 1995 conference.

fits,] only if that Employee is not engaged in regular employment or occupation for remuneration or profit and, *on the basis of medical evidence satisfactory to the Insurance Company,* the Employee is found to be wholly prevented ... from engaging in regular employment. ...

*Id.* at 983 (emphasis in original). This provision does not merely require evidence of incurring a medical expense, such as the proof of loss provision in this case, but expressly required medical evidence satisfactory to the insurer of the condition suffered by the applicant for benefits. *See Donaldson v. Metropolitan Life Ins. Co.,* 812 F.Supp. 103, 105–06 (E.D.Mich.1993) (distinguishing *Miller* from a proof of loss provision).

In *Bounds v. Bell Atlantic Enterprises Flexible Long–Term Disability Plan,* the Eighth Circuit held that a proof of loss provision did not constitute a grant of discretion to invoke review under an arbitrary and capricious standard. 32 F.3d 337, 339 (8th Cir.1994). *See also Donaldson,* 812 F.Supp. at 105–06 (applying *de novo* review despite proof of loss provision in ERISA plan); *Buchholz v. General Elec. Employee Benefit Plan,* 720 F.Supp. 102, 103–05 (N.D.Ill.1989) (same). The court in *Bounds* reasoned that language in the policy providing that claims will be paid after "adequate proof of loss" was not "explicit discretion-granting language." *Bounds,* 32 F.3d at 339.

█ The reasoning of *Bounds* comports with the framework adopted by the First Circuit in this area. Under First Circuit precedents, the language of an ERISA plan must *clearly* confer discretion on the plan administrator to merit review under the arbitrary and capricious standard. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583 (1st Cir.1993); *McLaughlin v. Reynolds,* 886 F.Supp. 902, 905 (D.Me.1995); *Cooke v. Lynn Sand & Stone Co.,* 875 F.Supp. 880, 883 (D.Mass.1994), *rev'd on oth-*

*er grounds,* 70 F.3d 201 (1st Cir.1995). In light of this clear statement rule, the court finds the reasoning of *Bounds* persuasive and, thus, concludes that the proof of loss provision in the Knapp Plan does not form the basis for a deferential standard of reviewing the plan administrator's decision.

█ Neither Cleary nor Knapp, in its prior pleadings, point to any other language in the Knapp Plan that might serve as a grant of discretion to the plan administrator. Accordingly, the court will review *de novo* Knapp's decision to deny Cleary benefits.[5]

### B. *Scope of Review*

█ Prior to *Firestone,* courts limited their review of whether a plan administrator's determination was arbitrary and capricious to the evidence before the plan administrator at the time of the determination. *See, e.g., Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1021 (4th Cir.1993). Whether this prior practice survives *Firestone*'s adoption of *de novo* review is unclear. As the Fourth Circuit has explained, *de novo* review can refer "both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court." *Id.* (quoting *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir.1990)). The federal circuit courts have split with respect to this issue. *Compare Perry,* 900 F.2d at 966 (*de novo* review limited to record before the administrator), *with Quesinberry,* 987 F.2d at 1025 (when conducting *de novo* review, district courts have discretion to allow evidence that was not before the plan administrator), *and with Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir.1989) (limiting evidence is "contrary to the concept of *de novo* review").

---

5. As the question before the court is a factual one, the court notes that the Fifth Circuit has held that challenges to a plan administrator's determinations of fact should be reviewed under an abuse of discretion standard. *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1557 (5th Cir.), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). *Pierre,* however, has not been followed by the lower courts in this circuit. *See Jorstad v. Connecticut Gen. Life Ins. Co.,* 844 F.Supp. 46, 54 (D.Mass.1994) (declining to follow *Pierre*). *See also McLaughlin,* 886 F.Supp. at 905–06 (applying *de novo* review to factual issue); *Ring v. Confederation Life Ins. Co.,* 751 F.Supp. 296, 298–99 (D.Mass.1990) (same). The court will follow these district courts.

The court could avoid this issue if the evidence offered by the parties coincided with the evidence before Knapp and TPA at the time the determination to deny Cleary benefits was made. The principal document about which the parties disagree is a report prepared for TPA by the Medical Review Institute of America ("the MRIA Report") on June 22, 1993. (Def. Ex. 7). The MRIA Report was prepared by an unnamed physician after review of unspecified "medical records." [6] Though it disclaims any intention to diagnose Cleary, the report generally opines that cerebral vascular accident is "well known as a complication of hypertension" and that "hypertension itself can cause an acceleration of atheriosclerosis in any part of the body" including "the heart and other parts of the cardiovascular system and cerebrovascular system." (Def. Ex. 7 at 3).

In a prior submission to the court, Knapp stated that TPA possessed the MRIA Report prior to denying Cleary benefits on August 31, 1992. *Memorandum of Law in Support of Defendant's Motion to Dismiss* at 3 ("After sending the remaining bills to an independent medical review company, Medical Review Institute of America, Knapp determined that the medical expenses were incurred due to a preexisting condition."). In its supplemental submission in response to the court's inquiry, Knapp recants this position, maintaining instead that on August 31, 1992, TPA merely had (1) Cleary's employment medical questionaire (Def. Ex. 4), (2) the November 1991 and February 1992 prescriptions for Vasotec (Def. Exs. 5 and 6), and (3) a letter with attachments submitted by Cleary's primary physician, Albert Sullivan, dated May 28, 1992. *Attachment to Supplemental Memorandum of the Defen-*

dant. The court concludes that, in addition to Cleary's medical bills, these enumerated items were the only records before TPA on August 31, 1992.

In addition to these materials, Knapp now offers the MRIA Report and various reports from Cleary's treating physicians.[7] Knapp suggests in its supplemental memorandum that TPA relied on these documents in reviewing the August 31, 1992 determination. As evidence that subsequent review took place, Knapp cites letters dated November 20, 1992 and May 14, 1993. (Def. Exs. 14 and 11). The court finds that these letters represent subsequent reviews undertaken by TPA at the request of Cleary's counsel. Nonetheless, there can be no dispute that TPA did not have the MRIA Report before it on May 14, 1993, for the MRIA Report was not prepared until June 22, 1993. Accordingly, the court must address the issue of whether additional evidence can be considered when reviewing a benefit determination *de novo*.

Though the First Circuit has not addressed this issue, two district courts within the First Circuit have. *McLaughlin*, 886 F.Supp. at 906; *Jorstad v. Connecticut Gen. Life Ins. Co.*, 844 F.Supp. 46, 55–56 (D.Mass. 1994). Citing *Moon*, *McLaughlin* held that *de novo* review required permitting the submission of evidence not presented to the plan administrator. 886 F.Supp. at 906. In contrast, *Jorstad* followed *Quesinberry*, holding that admission of additional evidence was a matter of discretion. 844 F.Supp. at 55–56.

The court has reviewed the reasoning of the various circuits and is persuaded by the position taken by the Fourth Circuit in *Quesinberry* and by Magistrate Judge Bowler in

---

**6.** Knapp has represented that TPA provided the MRIA with Cleary's medical bills. *Memorandum of Law in Support of Defendant's Motion to Dismiss* at 3; *Memorandum of Defendant in Support of Its Proposed Findings of Fact* at 7.

**7.** These reports comprise: (1) a letter from Dr. Michael C. Irizarry to Dr. Sullivan dated April 28, 1992, (Def. Ex. 8); (2) a medical history form prepared by Dr. Sullivan on April 30, 1992, (Def. Ex. 9); (3) a discharge summary prepared by Dr. Irizarry and dated March 10, 1992, (Def. Ex. 10). Despite Knapp's suggestion to the contrary, *Supplemental Memorandum of the Defendant* at 9–10,

the evidence submitted by Knapp does not provide a sufficient basis for concluding that these records were in TPA's possession at the time of its review. Indeed, the court finds it curious that counsel for Knapp represented at the conference on July 20, 1995 that they obtained the physician records through the course of discovery in this litigation. *Transcript of July 20, 1995 Further Conference* at 2. Nonetheless, Cleary has also offered a medical report by Dr. Sullivan dated July 19, 1995 with attachments, which include the physician reports that Knapp seeks to submit. (Pl.Ex. B–3).

*Jorstad.* As *Quesinberry* recognizes, a limited discretionary approach offers flexibility when dealing with the wide variety of ERISA cases. 987 F.2d at 1025. Where the administrative review procedure leaves the court with a sparse record, courts will often be unable to assess the merits of complex medical issues without supplementation of the record. In such cases, both the insured and the insurer deserve an opportunity to provide the court with a sufficient basis for reaching an informed decision. On the other hand, where an adequate administrative record has been created, allowing the development and submission of additional evidence would frustrate ERISA's goal of expeditious resolution of benefit disputes.

*Quesinberry* identifies the following factors for informing the court's exercise of discretion:

[C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and administrator are the same entity and the court in concerned about impartiality; claims that would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* at 1027. In this case, the administrative record is sparse, and the causation issue is complex. Accordingly, the court will consider the materials submitted by the parties that were not before Knapp and TPA.

### C. *Burden of Proof*

█ The final preliminary question the court must address regards the burden of proof. Where ERISA does not regulate the substantive content of plans, courts must fill in the resulting gaps through the development of federal common law. *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954. ERISA is silent on which party bears the burden of proof in a challenge of a denial of benefits.

29 U.S.C.A. § 1132(a)(1)(B); *Bateman v. Equitable Variable Life Ins. Co.,* 902 F.Supp. 36, 38 (S.D.N.Y.1995).

In response to the court's query concerning which party carries the burden of proof in establishing that Cleary's cerebral vascular accident falls within the pre-existing condition exclusion, Knapp answered that:

The plaintiff bears the burden of proof. There is nothing in the statutory scheme of ERISA, nor in the common law construing it, to alter the general rule that the plaintiff bears the burden of proof in a civil action.... To prevail in this case, the plaintiff must show that she met the eligibility requirements of the Plan and *that her preexisting condition did not fall within the terms of the exclusion.*

*Supplemental Memorandum of the Defendant* at 5 (emphasis added). Knapp cited no authority in support of this position.

The court's independent research has found authority contrary to the position advanced by Knapp. Indeed, it is a general rule of insurance law that the insurer bears the burden of showing that a covered injury falls within an exclusion provision. *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192, 1205 (10th Cir.1992) (citing cases). *See also GRE Ins. Group v. Metropolitan Boston Housing Partnership, Inc.,* 61 F.3d 79, 81 (1st Cir.1995) (under Massachusetts law, "[t]he insured bears the initial burden of proving that a claim falls within the grant of coverage, which, once established, shifts the burden onto the insurer to show the applicability of any exclusion"); *U.S. Liability Ins. Co. v. Selman,* 882 F.Supp. 1163, 1164 (D.Mass.) (same), *aff'd,* 70 F.3d 684 (1st Cir. 1995). This general rule has been applied as federal common law by federal courts in ERISA cases. *See, e.g., Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir.1992). In a recent unpublished opinion concerning a pre-existing condition exclusion, the Sixth Circuit held that "a plan administrator attempting to establish exclusion from coverage has the burden to establish by a preponderance of evidence that a covered employee's illness or medical condition is excludable." *Clark v. Metropolitan Life Ins. Co.,* slip op. No. 94–3840, 1995 WL 592102 at

* 1 (6th Cir. October 5, 1995). *See also Brewer v. Protexall, Inc.,* slip op. No. 91–2222, 1994 WL 782231 at * 1 (C.D.Ill. July 5, 1994) (insurer had burden of proof on the issue of pre-existing condition exclusion in action brought under ERISA); *Pfeffer v. Reserve Life Ins. Co.,* slip op. No. 89–4698, 1990 WL 142056 at * 5 (E.D.La. September 20, 1990) (applying Louisiana insurance law, insurer had burden of showing that illness "came within the [policy's] definitions of pre-existing conditions").

The court has found other persuasive authority supporting the Sixth Circuit's holding in *Clark.* Though there is a split among common law jurisdictions regarding who holds the burden of proof with respect to pre-existing condition exclusions, the clear majority place the burden on the insurer. *See,* John C. Williams, Annotation, *Construction and Application of Provision in Health or Hospitalization Policy Excluding or Postponing Coverage of Illness Originating Prior to Issuance of Policy or Within Stated Time,* 94 A.L.R.3d 990, 1000–02 (1979 & Supp.1995) (collecting cases). Moreover, this majority view is supported by the leading treatise on insurance law. 21 John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 12173, 194 (1980) ("Where a policy excepts loss caused by sickness contracted prior to issuance of the policy, the burden is on the insurer to bring the case within the exception.").

The only First Circuit decision found by the court that touches this issue is *Hughes v. Boston Mutual Life. Ins. Co.,* 26 F.3d 264 (1st Cir.1994). In *Hughes,* the district court found that the plaintiff's multiple sclerosis for which he sought benefits existed during the probationary period of the ERISA plan's recent treatment exclusion and granted summary judgment for the defendant insurance company. *Id.* at 266. In reversing the district court, the First Circuit concluded that, while there was no dispute that the plaintiff suffered from multiple sclerosis during the probationary period, there was a genuine issue of fact regarding the meaning of the recent treatment exclusion in the plan. *Id.* 269–70.

With respect to the issue presently before this court, the relevant portion of the opinion in *Hughes* occurs in the court's recitation of the standard for reviewing the district court's grant of summary judgment. The First Circuit wrote that "where the non-moving party bears the burden of persuasion at trial, it can only avert to summary judgment with a display of evidence 'sufficient to establish the existence of the element[s] essential to [its] case.'" *Id.* at 268 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Because the plaintiff with the alleged pre-existing multiple-sclerosis was the non-moving party in *Hughes,* it appears that the First Circuit placed the burden of proof to show the non-applicability of a pre-existing condition exclusion on the insured in that case.

█ The court, however, declines to treat this passing reference in *Hughes* as binding authority on the issue of the burden of proof. The passage is dictum because, as the court in *Hughes* ultimately ruled in favor of the insured, the locus of the burden of proof was not essential to the outcome of the case. *See Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453, 459 (1st Cir.1992) (statements not essential to determination of legal question before the court are dicta); *United States v. Crawley,* 837 F.2d 291, 292 (7th Cir.1988) (discussing definitions of dictum). As dictum, the statement in *Hughes* is not binding authority. *Dedham Water,* 972 F.2d at 459 ("[d]ictum constitutes neither the law of the case nor the stuff of binding precedent"). To be sure, courts may give weight to dictum, but mere obiter, in contrast to a carefully considered statement, is entitled to little weight. *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 19 (1st Cir.1991), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). Moreover, the passage regarding the burden of proof in *Hughes* is neither an integral part of the opinion nor an issue refined by the fires of adversary presentation. *See Crawley,* 837 F.2d at 292–93 (discussing factors for declining to follow dicta).

Additionally, the statement in *Hughes* can be reasonably interpreted as not referring to the question of who has the burden of per-

suasion with respect to the pre-existing condition exclusion. As the cases cited above demonstrate, the insured has the initial burden of persuasion on the issue of coverage and the passage in *Hughes* may signify nothing more than recognition of this burden. The implication suggested by the passage that the insured also had the burden on the pre-existing condition exclusion may, thus, have been entirely inadvertent. *See Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir.1994) (inadvertent language in prior opinion is not binding).

In this case, there is no dispute that Cleary falls within the eligibility requirements of the Knapp Plan. Rather, the issue is whether she is excluded because her illness falls within the MassMutual Plan's provision excluding payment for pre-existing conditions. On this issue, the court follows the Sixth Circuit's decision in *Clark* and the majority common law view, and concludes that Knapp has the burden.[8]

## D. *The Merits*

■ To sustain its burden of showing that hypertension caused Cleary's stroke, Knapp relies on the MRIA Report and three physician records. For the reasons discussed below, the court concludes that this evidence is insufficient to sustain Knapp's burden of proof.

The MRIA Report does not persuade the court that Cleary's stroke was caused by hypertension for several reasons. First, the MRIA Report does not offer any specific diagnostic opinion with respect to Cleary. As it notes in its opening paragraph:

THE FOLLOWING MEMORANDUM IS NOT CASE SPECIFIC. THE GENERAL INFORMATION CONTAINED HEREIN SHOULD NOT BE CON-STRUED AS A REVIEW OF ACTUAL MEDICAL RECORDS.

(Def. Ex. 7 at 1). Further, the author of the report concedes that "there may be facts and circumstances not disclosed in the review documents which justify a different conclusion." (Def. Ex. 7 at 5).

Second, even the broad statements in the MRIA Report do not establish that it is more probable than not that, where a person with hypertension subsequently suffers a stroke, hypertension is the cause. Indeed, the MRIA Report does not contain a clear statement of such an opinion. Moreover, statements in the MRIA Report tend to support a contrary conclusion. For example, it explains that "[s]ince *uncontrolled* hypertension can lead to a [cerebral vascular accident], the major limiting factor in this problem is to separate out those conditions associated with hypertension which are also associated with cardiac disease." (Def. Ex. 7 at 4) (emphasis added). In other words, the presence of cardiac disease may or may not arise from hypertension and it is a diagnostic task, which is not undertaken in the report, to sort between such instances.

Finally, the failure of the MRIA Report to specifically examine Cleary's case is especially significant in light of evidence of other factors in Cleary's medical history related to stroke. Dr. Irizarry explained that Cleary suffered "multiple lacunar strokes secondary to risk factors of hypertension and smoking as well as a hypercholesterolemia[9]." (Def. Ex. 8 at 2). Dr. Sullivan noted "recent cerebrovascular accident with risk factors of hypertension, cigarette smoking and positive family history." (Def. Ex. 9 at 3). Because Cleary's hypertension was being treated with Vasotec, it seems more probable that these other risk factors were the source of her stroke.[10] (*See* Def. Ex. 7 at 3) (citing studies

---

**8.** There may be occasions where an ERISA plan's pre-existing condition might be interpreted as relating to coverage rather than an exclusion. *See, e.g., Andover Newton Theological School, Inc. v. Continental Casualty Co.*, 964 F.2d 1237, 1241–43 (1st Cir.1992) (discussing interpretation of insurance policy coverage and exclusion provisions and the burden of proof). Regardless of whether a differently phrased pre-existing condition provision might leave the burden on the insured, the court finds that the pre-existing condition provisions at issue in this case are exclusion provisions rather than precondition to coverage provisions.

**9.** Excess of cholesterol in the blood. *Dorland's Illustrated Medical Dictionary* at 701 (24th ed. 1965).

**10.** Knapp did not raise as an affirmative defense in its *Amended Answer to the Amended Complaint* that Cleary is barred from recovery because of

showing reduction in rate of strokes among hypertensive patients who received treatment).

With respect to the physician records, Knapp relies on the statements that hypertension was a "secondary risk factor" in treating Cleary's stroke. To say that a condition is a factor to be addressed in controlling Cleary's course of treatment for stroke is not to say, however, that that condition *caused* her stroke.

■ In short, neither the treating physician reports nor the MRIA Report contain an opinion that Cleary's stroke was caused by hypertension. *See Marshall v. UNUM Life Ins. Co.*, 13 F.3d 282, 284 (8th Cir.1994) (noting in dicta that there are cases where "an expert medical opinion is necessary to link a pre-existing condition and a disabling illness"). Where expert evidence is necessary to establish a causal relationship, the party bearing the burden of proof may not prevail if the "expert evidence consists of testimony expressed only in terms of various possibilities." *Siegel v. Mut. Life Ins. Co. of New York*, 490 F.Supp. 367, 368 (D.Mass. 1980). As the MRIA Report and treating physician reports do no more than suggest the possibility that Cleary's stroke was caused by her pre-existing hypertension, the court, as the trier-of-fact, concludes that Knapp has not sustained its burden on this issue.

### IV.

### *CONCLUSION*

For the reasons stated above, the court concludes that Knapp is obligated to pay for

her alleged misrepresentation in the medical questionaire regarding her history of smoking, nor is this issue briefed in its *Memorandum of the Defendant in Support of Its Proposed Findings of Fact.* Knapp, however, does contend that:

> The pre-existing condition of addiction to smoking—which Cleary denied but which the records reveal that she had—is also causally related to the stroke and is further evidence that TPA acted properly in determining that the charges for the stroke were excluded from coverage pursuant to the pre-existing condition clause.

*Memorandum of the Defendant in Support of Its Proposed Findings of Fact* at 8. Even if the court were inclined to regard Cleary's alleged addic-

the medical expenses incurred by Cleary as a result of her stroke.[11]

tion to smoking as a pre-existing illness under the Knapp Plan, treatment for expenses due to that illness would not fall within the MassMutual Plan exclusion because there is no evidence that Cleary sought "medical care or treatment for that illness" prior to the running of the 90 consecutive day period that began on December 1, 1991.

11. Because the court has some questions regarding the inclusion of expenses for hypertension medication in Cleary's compilation of unpaid medical expenses (Pl.Ex. A–4) and the possibility of deductibles, the court reserves decision regarding the amount of the total unpaid claims that Knapp must pay. The court also reserves decision on the issue of attorney's fees.