Donald C. WINSTON

v.

**MAINE TECHNICAL COLLEGE SYSTEM, et al.**

Supreme Judicial Court of Maine.

Argued May 10, 1993.

Decided Sept. 1, 1993.

---

John J. Finn (orally), Yarmouth, for plaintiff.

Linda Sibery Crawford (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

We are called on to decide whether a person who is diagnosed as being subject to compulsive sexual behavior may be considered as mentally disabled for purposes of the antidiscrimination provisions with respect to employment within the purview of the Federal Rehabilitation Act of 1973 or the Maine Human Rights Act. Plaintiff Donald C. Winston appeals from an order of the Superior Court (Androscoggin County, *Alexander, J.*) granting summary judgment in favor of defendants Maine Technical College System (MTCS), Central Maine Technical College (CMTC), and Richard Conrath.[1] He contends that genuine issues of material fact remain and that defendants are not entitled to a judgment on his claim that the termination of his employment constitutes unlawful discrimination on the basis of his mental handicap of compulsive sexual addiction in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (Pamph.1993), the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4632 (1989 & Supp.1992), and the First and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C.A. § 1983 (1981). The applicable law in effect at the time the Superior Court rendered its decision excluded sexual be-

havior disorders from the definition of a disabled individual. We, therefore, affirm the judgment.

The factual assertions viewed in the light most favorable to plaintiff may be summarized as follows: Plaintiff taught in the MTCS for nineteen years. He was a tenured English instructor at CMTC in 1989 when he was terminated for violating the school's sexual harassment policy by kissing one of his eighteen-year-old female students after a sexually suggestive conversation. Plaintiff asserts that the kiss was consensual, but he acknowledges that the kiss was inappropriate and he immediately apologized to the student several times. He then met with Conrath, disclosing that he was "sexually obsessive" and that he had had some involvement with a student, but that he had taken care of it. Twenty days later the student told Conrath that plaintiff had sexually harassed her. The charges were investigated. During this period Conrath made numerous references to his concern for plaintiff's mental health and commented that he thought plaintiff was "deeply troubled psychologically."[2] Plaintiff was subsequently discharged. Although the termination letter refers only to the single incident of inappropriate behavior with a student, defendants were aware of four prior instances of sexual behavior with students.[3]

After his termination, plaintiff filed a grievance under the collective bargaining agreement of his union, the Maine State Teachers' Association. The union subsequently filed for arbitration under the

---

**1.** Conrath was the Director of Central Maine Vocational Technical Institute, now CMTC, during the 1988–1989 school year.

**2.** CMTC was aware that plaintiff had been experiencing a great deal of stress in the years preceding the incident that led to his termination. Plaintiff was granted an emergency leave in March 1987 because of personal stress. In the spring of 1987 he had a breakdown in a meeting with the school's assistant director. He began seeking out prostitutes in the summer of 1988, and disclosed his concern over this behavior to his Department Chair. These facts and Conrath's remarks are the basis of plaintiff's claim

that he was terminated because of his asserted disability.

**3.** In 1983 or 1984 a female student filed a claim of sexual harassment against plaintiff, but the school never informed him of the charge and he denies any misconduct. While an instructor at Northern Maine Technical College, plaintiff admits to having consensual sexual relationships with two adult students, one of whom was never enrolled in his class. The fourth incident occurred in the fall of 1988 when he made a date with one of his students and then kissed her. The next day plaintiff broke the date. Only the 1983 incident resulted in a complaint.

agreement. After eleven days of hearings the arbitrator denied the grievance, finding that CMTC and MTCS did not violate the collective bargaining agreement in discharging plaintiff.[4] The union declined plaintiff's request to appeal the arbitrator's decision.

Plaintiff subsequently filed this lawsuit, claiming that he was terminated because of his "mental handicap of sexual addiction." The record contains evaluations of plaintiff's condition by three mental health professionals, two of whom diagnosed plaintiff's sexual addiction as Impulse Control Disorder Not Otherwise Specified, based on the Diagnostic and Statistical Manual of Mental Disorders (3d ed. rev. 1987). Both experts stated that the disorder led to plaintiff's termination, that the addiction is a permanent condition, that it was therefore unlikely that plaintiff would be hired in another teaching position, and that plaintiff is currently capable of performing his job as a teacher, including contact with students, without accommodation. The third expert testified that he does not believe that the Diagnostic and Statistical Manual is intended to be applied to sexual behavior, but even if it were, plaintiff would not meet the requisite criteria because plaintiff's behavior was controllable rather than compulsive.

The Superior Court granted a summary judgment in favor of defendants on all claims, ruling as a matter of law that plaintiff's claimed disability of impulse control disorder does not qualify him for protection under applicable laws protecting persons with disabilities from employment discrimination.

■ As a preliminary matter, we reject defendants' argument that the arbitrator's decision precludes the assertion of plaintiff's claim under anti-discrimination statutes and establishes conclusively that harassment occurred. Defendants cite *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) for the proposition that employment discrimination claims may be the subject of binding arbitration when an employee agrees to arbitrate statutory claims.[5] By merely joining a union, however, without specifically contracting to arbitrate statutory employment discrimination claims, an employee is not precluded from asserting such claims in litigation.

Our analysis begins with section 504 of the Rehabilitation Act of 1973 (Act) that provides that: "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be ... subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794. A disabled individual is defined as one who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *Id.* § 706(8)(B). The Department of Health, Education and Welfare promulgated regulations offering guidance on the scope of section 504. Those regulations provide that "mental impairment" is "any mental or psychological disorder, such as ... emotional or mental illness," 45 C.F.R. § 84.-3(j)(2)(i)(B) (1992), and define "major life activities" to include working. *Id.* § 84.-3(j)(2)(ii). The appendix to the regulations indicates that the Act should not be limited to traditional handicaps. 45 C.F.R. pt. 84, app. A at 377 (1992).

---

**4.** The agreement provides that termination may be only for just cause and establishes a policy against all forms of illegal discrimination.

**5.** We conclude that the instant situation fits within the rule set out in *Alexander v. Gardner–Denver Co*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), that the arbitration of contract-based claims pursuant to a collective bargaining agreement does not preclude subsequent judicial resolution of statutory claims. This is true even when, as here, the claim was before the arbitrator and the collective bargaining agreement prohibits the type of discrimination alleged in the suit claiming a violation of statutory rights. *See id.* at 289, 104 S.Ct. at 1802. The vitality of *Alexander* and its progeny was reaffirmed by the Supreme Court in *Gilmer,* —— U.S. at ——, ——, 111 S.Ct. at 1656–57.

 Although not raised by the parties, we note that, effective October 29, 1992, the Act was amended to provide that the term "individual with a disability" does not include an individual on the basis of certain conditions, including sexual behavior disorders. Pub.L. 102–569, § 102, 106 Stat. 4349 (1992) (codified at 29 U.S.C.A. § 706(8)(F) (Pamph.1993)).[6] Plaintiff's claimed addiction is a sexual behavior disorder. Because the Superior Court ruled on plaintiff's discrimination claim after the effective date of the amendment, the court properly could have relied on the amendment to conclude that plaintiff had no claim under the Act as a matter of law. In *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the United States Supreme Court held that "a court is to apply the law in effect at the time it renders its decision...." This establishes a presumption that a new statute should be applied retroactively even if it "does not explicitly recite that it is to be applied to pending cases," and rejects the proposition that "a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." *Id.* at 715, 94 S.Ct. at 2018. Here, there is no clear evidence of a congressional intent for or against the retroactive application of section 706(8)(F). Therefore, we find that the amendment could have been relied on by the Superior Court to support its ruling.[7]

 We next address whether a sexual impulse control disorder can constitute a legal disability under the Maine Human Rights Act (MHRA), 5 M.R.S.A. §§ 4551–4632. The provisions of the MHRA regarding mental disability are very similar to those contained in the Act. The MHRA prohibits the discharge of an employee because of a mental disability, except when based on a bona fide occupational qualification. *Id.* § 4572(1)(A) (Supp.1992). The MHRA defines "mental disability" as "any disability ... or mental condition caused by ... illness, and includes the ... mental condition of a person that constitutes a substantial disability as determined ... by a psychiatrist or psychologist ..." *Id.* § 4553(7–A) (Supp.1992). The Maine Human Rights Commission has supplemented the statutory definition by regulation as follows: "1. An applicant or employee who has a 'physical or mental handicap' means any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or·is regarded as having such an impairment." Me. Human Rights Comm'n, Employment Reg. § 3.02(C)(1). The regulations also provide that the term 'mental impairment' includes emotional illness, that 'major life activities' includes working, and that one is 'regarded as having an impairment' if the employer treats him as having an impairment and as being substantially limited by it. *Id.* § 3.02(C)(2). Finally, the regulations state that "the remedial provisions of the [MHRA] shall be given broad construction and its exceptions shall be construed narrowly." *Id.* § 3.01(C)(1). There is no explicit exclusion of sexual behavior disorders from the definition of a disabled individual.

We have stated that because the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA. *Maine Human Rights Comm'n*

---

**6.** 29 U.S.C.A. § 706(8)(F) provides in its entirety as follows:

(F) For the purposes of sections 791, 793, and 794 of this title, the term "individual with a disability" does not include an individual on the basis of—

(i) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(ii) compulsive gambling, kleptomania, or pyromania; or

(iii) psychoactive substance use disorders resulting from current illegal use of drugs

**7.** We note that the presumption established in *Bradley* that a court apply the law in effect at the time it renders its decision may be defeated when there is clear congressional intent to the contrary or when its application would result in "manifest injustice" to a party. *Bradley v. School Board of City of Richmond,* 416 U.S. at 711, 94 S.Ct. at 2016. Neither of those exceptions applies here.

*v. City of Auburn,* 408 A.2d 1253, 1261 (Me.1979). Unfortunately, a review of federal case law concerning conditions that constitute a disability provides minimal guidance in determining when it is appropriate to impose categorical limits on the definition of a disabled individual. Section 706(8)(F), however, clarifies the original intent of Congress as to the parameters of the definition of a disabled individual under federal law. Because the MHRA was modeled after the Act, and the Act was not intended to protect individuals with sexual behavior disorders, we conclude that plaintiff's condition is not protected under the MHRA as a matter of law. We further note that the Diagnostic and Statistical Manual does not officially include sexual addiction, that defendant's psychiatrist's opinion is based on a very broad "process" addiction model representing the view of a "subset" of physicians, and that the Americans with Disabilities Act of 1990 (ADA) also specifically excludes "sexual behavior disorders" from the term "disability," 42 U.S.C.A. § 12211(b)(1) (Pamph.1993).

■ Plaintiff next argues that he has a cognizable claim pursuant to 42 U.S.C. § 1983. Defendants counter that this claim must fail because neither MTCS nor CMTC are "persons" subject to suit under 42 U.S.C. § 1983.[8] In *Will v. Michigan Dept of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that neither a state, state agency, nor state official sued in an official capacity is a "person" subject to suit pursuant to § 1983. Therefore, if the state is the real party in interest, the action is not being maintained against a "person" subject to suit within the meaning of § 1983.

■ In determining whether the state is the real party in interest we look to (1) the relationship between the state and the defendant to determine if the defendant is an alter ego of the state or if it is relatively autonomous; and (2) whether funds to pay a judgment would come from the state treasury. *See* 1 Joseph G. Cook & John L. Sobieski, Jr., Civil Rights Actions § 2.01(D), at 2–60.11, 2–60.14 (1990) [hereinafter Cook & Sobieski].

■ With regard to the first issue, the evidence demonstrates that MTCS and CMTC have an intimate relationship with the state and can reasonably be regarded as an alter ego of the state. The MTCS is created by Title 20–A M.R.S.A. § 12702 (1993) which provides as follows:

There is established the Maine Technical College System which shall be a body corporate and politic and a public instrumentality of the State and the exercise of the powers conferred by this chapter shall be deemed and held to be the performance of essential governmental functions. The system shall consist of the board of trustees, the Technical College Support Office and the technical colleges.

Members of the Board of Trustees are appointed by the Governor for four year terms and must be confirmed by the Legislature. *Id.* § 12705(2). The Commissioners of Education, Economic and Community Development, and Labor serve ex officio. *Id.* § 12705(1). The Governor and Legislature approve the system's budget prepared by the Board of Trustees which is "used in support of any requests to the Legislature for General Fund appropriations" needed to supplement other resources available to the system, and which is the basis of the system's fiscal management plan. *Id.* §§ 12706(4)–(4–A). The Maine Technical College System is also defined as part of the "State" for purposes of the Maine Tort Claims Act. 14 M.R.S.A. § 8102(4) (Supp. 1992). Although the System has the power to own and transfer real estate, any such transfers are subject to the approval of the Legislature. 20–A M.R.S.A. § 12706(13).

**8.** Section 1983 reads in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff cites statutory provisions granting the MTCS the right to sue and be sued in its own name, *id.* § 12706(10), delegating extensive powers to the board of trustees, *id.* § 12706, and giving the MTCS the right to own and transfer real property, in support of his contention that the defendants are relatively autonomous from the state. Although the MTCS has considerable autonomy in regard to its daily operations, the critical functions of budgeting and funding remain subject to state control, and therefore defendants can reasonably be characterized as alter egos of the state.

■ Plaintiff also asserts that because the MTCS has exclusive control over certain funds not received from the state, such as tuition payments and endowments, any judgment could be paid from these funds and the state treasury would not be implicated. We disagree. First, because almost all state agencies have access to non-state funds, this factor cannot be the determining one. Second, as a practical matter, even if a judgment were not paid directly with state funds, state appropriated funds would have to be used to replenish the funds expended.

Because payment of a judgment would interfere with the state's fiscal autonomy, and the MTCS is highly dependant on the state, we conclude that the state is a real party in interest.[9] Therefore, neither CMTC, MTCS, nor Conrath are "persons"

within the meaning of § 1983 and the judgment was proper as to these claims.

■ Plaintiff finally argues that the complaint states a claim against Conrath individually pursuant to § 1983. We disagree. Contrary to plaintiff's contention, Conrath is shielded by qualified immunity from personal liability for his discretionary acts, including the termination of plaintiff's employment. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (Generally, government officials performing discretionary functions have qualified immunity "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with rights they are alleged to have violated"). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). That is not the case here.

The entry is:

Judgment affirmed.

All concurring.

---

9. We note that the majority of courts that have considered the issue have also concluded that the state is a real party in interest in actions initiated against state universities and colleges. *See* Cook & Sobieski, § 2.01(D) at 2–60.23—2–60.27.