Nellie C. DAVIDSON, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, et al.,
Defendants.

No. CIV. 97–70–P–C.

United States District Court,
D. Maine.

Feb. 26, 1998.

**2**

Ronald E. Colby, III, Sumner H. Lipman, Robert J. Stolt, Laura J. Garcia, Lipman & Katz, Augusta, ME, for Plaintiff.

Richard G. Moon, Robert M. Hayes, Moon, Moss, McGill & Bachelder, P.A., Portland, ME, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Nellie Davidson has brought this suit against Defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Liberty Life Assurance Company ("Liberty Life"), in which she alleges violations of the Americans with Disabilities Act ("ADA") (Counts I and X), 42 U.S.C. § 12101 *et seq.;* the Maine Human Rights Act ("MHRA") (Count II), 5 M.R.S.A. § 4551 *et seq.;* and the Employee Retirement Income Security Act ("ERISA") (Counts III and IV), 29 U.S.C. § 1001 *et seq.*[1] Now before the Court

---

1. Six of the counts contained in Plaintiff's Complaint were previously dismissed by this Court. *See* Order Affirming the Recommended Decision of the Magistrate Judge (Docket No. 10).

are Defendants' Motions for Summary Judgement on all five of Plaintiff's remaining counts. *See* Defendants' Motion for Summary Judgment and Memorandum in Support Thereof as to Counts I, II, and X ("Defendants' Motion as to Counts I, II, and X") (Docket No. 21); Defendants' Motion for Summary Judgment and Memorandum in Support Thereof as to Counts III and IV ("Defendants' Motion as to Counts III and IV") (Docket No. 23). For the reasons stated below, the Court will deny Defendant Liberty Mutual's Motion as to Counts I, II, and X[2] and will grant Defendants' Motion as to Counts III and IV.

## I. BACKGROUND

Liberty Mutual employed Plaintiff in a variety of positions since September of 1977. Plaintiff's Statement of Genuine Issues of Material Fact in Support of Opposition to Motion for Summary Judgment on Counts I, II, III, IV, X ("Plaintiff's Statement") (Docket No. 28) ¶ 1; Defendants' Statement of Material Facts as to Which There Is No Dispute as to Counts I, II and X ("Defendants' Statement as to Counts I, II, and X") (Docket No. 22) ¶ 1. From June 1986 to June 9, 1995, Plaintiff held a position as a Senior Office Assistant ("SOA"), a Grade 5 position involving mainly clerical work with an emphasis on data inputting, filing, and other clerical duties. Plaintiff's Statement ¶ 3; Defendants' Statement as to Counts I, II, and X ¶¶ 2, 4. As a condition of her employment, Plaintiff enrolled in short-term ("STD") and long-term ("LTD") disability benefits plans. Plaintiff's Statement ¶ 4; Defendants' Statement of Material Facts as to Which There is No Dispute as to Counts III and IV ("Defendants' Statement as to Counts III and IV") (Docket No. 24) ¶ 4. Liberty Mutual was the Plan Administrator of the LTD plan and designated Liberty Life, a subsidiary of Liberty Mutual, to administer the LTD plan. Defendants' Statement as to Counts III and IV ¶¶ 6, 8.

In 1993, Plaintiff began to experience medical problems with her right shoulder. Plaintiff was absent from work on short-term disability leave between July 13, 1993, and October 19, 1993, during which time she had surgery on her shoulder. Affidavit of Nellie C. Davidson ("Davidson Aff.") ¶ 5; Affidavit of Nancy Duplisea ("Duplisea Aff.") ¶ 32. A recurrence of Plaintiff's shoulder problems prompted her to take disability leave again between March 9, 1994, and February 27, 1995. Davidson Aff. ¶ 7; Defendants' Statement as to Counts I, II, and X ¶ 6. When Plaintiff returned to work on February 28, 1995, her doctor indicated that she could work five to six hours a day at a light-duty position with the following restrictions: (1) no lifting greater than fifteen pounds; (2) no overhead activity; and (3) limited repetitive activities. Davidson Aff. ¶ 10. Upon her return, Plaintiff worked for a month in a temporary, part-time Call Attendant position, but she received her full salary and retained her official position as a SOA. Davidson Aff. ¶¶ 10–11; Defendants' Statement as to Counts I, II, and X ¶¶ 2, 10.

After March 28, 1995, when the temporary Call Attendant position was no longer available, Plaintiff worked full-time in a "work-hardening" capacity and performed a variety of tasks including those of the Call Attendant position. Davidson Aff. ¶ 13; Defendants' Statement as to Counts I, II, and X ¶ 10. While working in a work-hardening capacity, Plaintiff applied for two positions, Coder and Insurance Assistant, that were posted as available at Liberty Mutual. Plaintiff's Statement ¶ 20; Defendants' Statement as to Counts I, II, and X ¶ 31. Plaintiff was not selected for either the Coder or the Insurance Assistant positions. Plaintiff's Statement ¶ 20; Defendants' Statement as to Counts I, II, and X ¶¶ 32–37. She was not chosen to fill one of the newly restructured SOA positions following a reorganization of Plaintiff's department in June 1995.[3] Plain-

---

2. To the extent that Plaintiff appears to assert Counts I, II, and X against both Liberty Mutual and Liberty Life, the Court grants Defendants' Motion as to Liberty Life. Liberty Life cannot be liable for employment discrimination under either the ADA or the MHRA because Liberty Life

never employed Plaintiff. 42 U.S.C. §§ 12111(2), 12112(a); 5 M.R.S.A. § 4572.

3. The effect of the reorganization on the SOA position previously held by Plaintiff is unclear to the Court. There is conflicting evidence in the

tiff's Statement ¶ 40; Defendants' Statement as to Counts I, II, and X ¶ 65.

In late May or early June of 1995, Liberty Mutual offered Plaintiff a permanent position as a part-time Call Attendant, which she declined. Davidson Aff. ¶¶ 18–19; Defendants' Statement as to Counts I, II, and X ¶¶ 50, 57. This Grade 4 position paid less and did not offer long-term disability benefits; further, the position was annually funded, and it was possible that the position might not have been funded after the end of 1995. Davidson Aff. ¶ 17; Defendants' Statement as to Counts I, II, and X ¶ 50. Following her rejection of the Call Attendant position, Plaintiff attempted to return to long-term disability leave after her final day of work on June 9, 1995, and thereafter she sought disability benefits. Davidson Aff. ¶ 20; Defendants' Statement as to Counts I, II, and X ¶ 69.

Liberty Mutual's LTD plan provides for two distinct periods of disability coverage. Initially, an enrollee is entitled to a twenty-six week period of coverage under Liberty Mutual's short-term disability plan. Affidavit of Ann Wurst ("Wurst Aff.") ¶ 9. Subsequently, a maximum of eighteen months of long-term disability coverage is available, providing the enrollee is totally disabled from her *own* occupation (the "own-occupation" period). *Id.* ¶ 10; Summary Plan Description of the Liberty Mutual Long–Term Disability Plan ("Summary Plan Description"), Defendants' Statement as to Counts III and IV, Ex. 2. At the end of this period, additional long-term coverage is available if the enrollee is totally disabled from *any* occupation (the "any-occupation" period). Wurst Aff. ¶ 10; Summary Plan Description, Defendants' Statement as to Counts III and IV, Ex. 2.

Liberty Life requested medical documentation from Plaintiff to support her disability claim, and Plaintiff's physician provided two statements, dated June 29, 1995, and July 17, 1995, setting forth Plaintiff's current diagnosis and physical restrictions. Defendants' Statement as to Counts III and IV ¶¶ 62–63.

The two statements submitted to Liberty Life indicate that Plaintiff was restricted as to overhead lifting and reaching, but they are silent as to limitations on repetitive motion. *See* Defendants' Motion as to Counts III and IV, Exs. A–8 and A–9. On August 7, 1995, Liberty Life concluded that Plaintiff was not disabled as to either her own occupation or any occupation and denied Plaintiff's claim for long-term disability benefits, retroactively effective on June 9, 1995. Davidson Aff. ¶ 26; Defendants' Statement as to Counts I, II, and X ¶ 71. On August 11, 1995, Liberty Mutual terminated Plaintiff, retroactively effective to June 9, 1995. Davidson Aff. ¶ 27; Defendants' Statement as to Counts I, II, and X ¶ 72.

Plaintiff subsequently appealed Liberty Life's denial of long-term disability benefits and submitted additional medical information which included her restriction on repetitive motions. Plaintiff's Statement ¶ 63; Defendants' Statement as to Counts III and IV ¶¶ 72–73. On December 6, 1995, Liberty Life reversed its prior denial and authorized long-term disability payments for the remaining own-occupation period of June 12, 1995, to December 1, 1995. Plaintiff's Statement ¶ 63; Defendants' Statement as to Counts III and IV ¶ 75. Plaintiff continued to be denied disability benefits for the subsequent any-occupation period. Plaintiff's Statement ¶ 67; Defendants' Statement as to Counts I, II, and X ¶ 84. Plaintiff then appealed Liberty Life's denial of benefits for the any-occupation period. Plaintiff's Statement ¶ 67; Defendants' Statement as to Counts III and IV ¶ 79. After further consideration of the administrative record and the solicitation of a peer review, Liberty Life affirmed its denial on May 9, 1996. Plaintiff's Statement ¶ 67; Defendants' Statement as to Counts III and IV ¶ 97.

## II. STANDARD

The Court of Appeals for the First Circuit has explained the workings and purposes of the summary judgment procedure:

---

record about the number of SOA positions prior to the reorganization as well as whether Plain-

tiff's position was filled or eliminated.

Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)....

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial-worthy issue exists. *See National Amusements, Inc. [v. Town of Dedham]*, 43 F.3d [731,] 735 [(1st Cir.1995)]]. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug, Inc].*, 895 F.2d [46,] 48 [(1st Cir. 1990)]]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Build-*

*ings]*, 960 F.2d [200,] 204 [(1st Cir.1992)]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party ...." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith]*, 904 F.2d [112,] 115 [(1st Cir.1990)], but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.]*, 896 F.2d [5,] 8 [(1st Cir.1990)]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

... [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding ....

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995).

### III. DISCUSSION

#### A. DEFENDANTS' MOTION AS TO COUNTS I, II, AND X

Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).[4] In furtherance of this mandate, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[5] The ADA's definition of discrimination includes "not making rea-

---

4. Maine courts generally look to federal law in the interpretation of the MHRA. *Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 45 (D.Me. 1996), *aff'd*, 105 F.3d 12 (1st Cir.1997); *Winston v. Maine Technical College System*, 631 A.2d 70, 74 (Me.1993), *cert. denied*, 511 U.S. 1069, 114 S.Ct. 1643, 128 L.Ed.2d 364 (1994). Although the Court's analysis will address the ADA claim, "the necessary conclusions as to the Plaintiff's

MHRA claim flow directly from this analysis." *Soileau*, 928 F.Supp. at 45.

5. For the purposes of summary judgment, Liberty Mutual does not dispute that it is a covered entity, nor does it dispute that Plaintiff has a disability as defined by the ADA.

sonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Examples of reasonable accommodation include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

■ To succeed under the ADA, the plaintiff must prove (1) that she was disabled within the meaning of the ADA; (2) that she was able to perform the meaningful functions of her job, either with or without reasonable accommodation; and (3) that her employer terminated her in whole or in part because of her disability. *See Katz v. City Metal Co.*, 87 F.3d 26, 30 (1st Cir.1996). If the plaintiff cannot prove her case directly, she may do so indirectly by "using the *prima facie* case and burden shifting methods that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) [and its progeny]." *Id.* at n. 2. For the purposes of an ADA claim, this means that the plaintiff has the burden of presenting a *prima facie* case proving by a preponderance of the evidence that she:

(i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled

employees; and (v) suffered damages as a result.

*Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir.1996). The defendant then must offer a legitimate nondiscriminatory reason for the negative employment action. *Watkins v. J & S Oil Co.*, 977 F.Supp. 520, 524 (D.Me.1997) (citations omitted). Finally, the plaintiff has the opportunity and the burden of proving that the defendant's "proffered reason is merely a pretext for disability discrimination." *Hodgens v. General Dynamics Corp.*, 963 F.Supp. 102, 107 (D.R.I. 1997).

■ The Court finds that there are a number of genuine issues of material fact which preclude summary judgment on Counts I, II, and X at this time. Most important, the record reveals factual disputes as to whether there were any reasonable accommodations that would have enabled Plaintiff to perform the essential functions of the Coder position or the restructured SOA position and, if so, whether Liberty Mutual engaged in a good-faith attempt to accommodate Plaintiff's disability.[6] Other issues include, *inter alia*, whether Plaintiff was given a performance rating for 1993–94. In light of these issues of fact, the Court will deny Defendant Liberty Mutual's Motion as to Counts I, II, and X.

**B. DEFENDANTS' MOTION AS TO COUNTS III AND IV**

Plaintiff's Complaint presents two distinct ERISA claims. First, Count III alleges a violation of section 510 of ERISA, 29 U.S.C. § 1140, which prohibits interference with protected rights provided for by ERISA. Second, Count IV asserts a claim pursuant to section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides for a right of action to secure judicial review of an adverse

---

**6.** Defendants argue that, because Plaintiff stated that she was "totally disabled" to the Social Security Administration, she is now estopped from asserting that she was qualified for a position at Liberty Mutual. However, Plaintiff's representations to the Social Security Administration occurred after June 9, 1995, when she took disability leave for the last time. *See Defendants' Statement as to Counts I, II, and X ¶ 82.* Thus, it

appears that she was not claiming to be disabled at the same time she was seeking or was entitled to any reasonable accommodations from her employer. In the Court's view, Plaintiff's application for Social Security disability benefits does not defeat her ADA claim as a matter of law. *See D'Aprile v. Fleet Services Corp.*, 92 F.3d 1, 4 (1st Cir.1996).

benefits decision. The Court will address Counts III and IV respectively.

## 1. Count III: Section 510

■ Section 510 of ERISA provides in part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140. "The ultimate inquiry in a section 510 case is whether the employment action was taken with the specific intent of interfering with the employee's ERISA benefits." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir.1995), *cert. denied*, 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996) (citations omitted). Here again, Plaintiff may prove her case by using the burden-shifting framework of *McDonnell Douglas*. *Id.* at 37–38.

■ To establish a *prima facie* case under section 510, the plaintiff must show the following elements: (1) that she is entitled to protection under ERISA; (2) that she was qualified for the position; and (3) that she was discharged under circumstances that give rise to an inference of discrimination. *Id.* at 38. The defendant then must offer "a legitimate, 'non-discriminatory' reason—*i.e.*, one unrelated to the plaintiff's entitlement to ERISA benefits—for its actions toward the plaintiff." [7] *Id.* Once the defendant has satisfied this requirement, the plaintiff has the burden of proving that "the defendant acted with the specific intent of interfering with the plaintiff's benefits." *Id.* at 39. To meet this burden, "a plaintiff must introduce evidence sufficient to support two findings: (1) that the employer's articulated reason for its employment actions was a pretext; and (2) that the true reason was to interfere with the plaintiff's receipt of benefits." *Id.* (citations omitted). The plaintiff must introduce evidence "sufficient for a rational jury to conclude that the employer's action was motivated by an intent to interfere with ERISA benefits." *Id.* The Court concludes that, even assuming that Plaintiff presents a *prima facie* case, she cannot satisfy the final and most important burden of proving that Liberty Mutual terminated her with the specific intent of interfering with her benefits rights under ERISA.

■ When Liberty Mutual terminated Plaintiff on August 11, 1995, she had already been denied LTD benefits by Liberty Life on August 7, 1995.[8] Therefore, as a matter of simple logic, her termination on August 11, 1995, could not interfere with her receipt of benefits because her claim for benefits had been denied as of August 7, 1995. Further, Liberty Mutual asserts that Plaintiff's termination did not affect her right to receive LTD benefits. Defendants' Statement as to Counts III and IV ¶ 59. As long as she remained eligible, Plaintiff could have continued to receive own-occupation and any-occupation LTD benefits after her termination,

---

7. Liberty Mutual asserts that it rightfully terminated Plaintiff pursuant to a company policy which provides "[i]f there are no job vacancies when you return to work or you decline an offer for a new position, your employment will be terminated, and you will be eligible for severance benefits." Duplisea Aff., Ex. 2. Liberty Mutual's employee handbook contained this policy, *id.* ¶ 27, and Plaintiff was aware of this policy. Deposition of Nellie C. Davidson II at 20–21.

8. In arguing that Defendants have manipulated the dates of Plaintiff's termination and denial of benefits, Plaintiff incorrectly asserts that Liberty Life's decision to deny Plaintiff's benefits was retroactive to June 12, 1995, rather than to June 9, 1995. *See* Plaintiff's Memorandum in Opposition to Motion for Summary Judgment on Counts III and IV (Docket No. 27) at 26–27. This mistake apparently stems from an error made by Defendants in their Motion as to Counts I, II, and X, in which they indicate that the retroactive date was June 12, 1995. *See* Defendants' Motion as to Counts I, II, and X at 8. However, the citation offered by Defendants in support of that proposition unquestionably provides that the retroactive date was June 9, 1995. *See* Defendant's Statement as to Counts I, II, and X ¶ 71. Furthermore, Plaintiff's own affidavit clearly states that the retroactive date of the denial was June 9, 1995. *See* Davidson Aff. ¶ 26. The record is replete with carelessness of this sort on the part of both parties. The Court will disregard Plaintiff's conspiratorial arguments based solely upon Defendants' mistake.

and, in fact, she did receive benefits after providing the necessary medical documentation to support an award of own-occupation benefits. Plaintiff's Statement ¶ 63; Defendants' Statement as to Counts III and IV ¶¶ 72–73. Plaintiff has not demonstrated any intent on Liberty Mutual's part to interfere with her ERISA benefits and cannot do so because it does not appear that Liberty Mutual's termination had any effect on Plaintiff's eligibility for benefits. Therefore, the Court will grant Defendants' Motion for Summary Judgment as to Count III.

## 2. Count IV: Section 502

Section 502 of ERISA provides a private right of action for participants and beneficiaries of benefits plans covered under ERISA. 29 U.S.C. § 1132(a). According to subsection (a)(1), a civil action may be brought by a participant or a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his future rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff employs this language of ERISA to assert that the decision to deny her any-occupation benefits was without support. Analyzing Plaintiff's claim requires the Court to embark on a two-step process. First, the Court must determine the proper standard for reviewing Liberty Life's decision to deny benefits to Plaintiff for the any-occupation period. Second, the Court must apply the appropriate standard in reviewing the denial.

ERISA itself does not specify a standard for reviewing benefits decisions made by out-of-court decision-makers. However, in *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court concluded that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. The Court of Appeals for the First Circuit has interpreted *Firestone* to require a clear grant of discretionary authority. *See Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir.1993). "The *Firestone* rule has been interpreted to mean that a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review." *Id.*

Defendants argue that because the LTD plan vests discretionary authority in Liberty Mutual, the decision of its designee, Liberty Life, is subject to the deferential arbitrary and capricious standard of review. The Summary Plan Description for the LTD plan provides that "[t]he Plan Administrator has the authority, in its sole discretion, to construe the terms of this Plan and to determine benefit eligibility. Decisions of the Plan Administrator regarding construction of the terms of this Plan and benefit eligibility are conclusive and binding." Summary Plan Description, Defendant's Statement as to Counts III and IV, Ex. 2. While the Court agrees that this is the type of language necessary to trigger the arbitrary and capricious standard of review, the Court determines on the record before it that Liberty Mutual has delegated its duties as plan administrator to Liberty Life, thus requiring the Court to apply a *de novo* standard of review.[9]

The delegation of fiduciary duties, such as those of plan administrator, may in some instances trigger *de novo* review rather than the deferential arbitrary and capricious standard of review. According to ERISA, "[t]he instrument under which a plan is maintained may expressly provide for procedures ... for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." 29

---

9. Because Liberty Life is a subsidiary of Liberty Mutual, a potential conflict of interest is implicated in Liberty Life's benefits decisions. However, because the Court will apply the *de novo* standard of review, it is unnecessary to reach a conclusion about the effect of a possible conflict of interest on the application of the arbitrary and

capricious standard of review. *See Firestone*, 489 U.S. at 115 ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r]' in determining whether there is an abuse of discretion.'") (citation omitted).

U.S.C. § 1105(c)(1). "To be an effective delegation of discretionary authority so that the deferential standard of review will apply, ... the fiduciary must properly designate a delegate for the fiduciary's discretionary authority." *Rodriguez–Abreu,* 986 F.2d at 584. The parties have not provided any portion of the LTD plan which indicates that the plan expressly permits delegation of the duties of the plan administrator.[10] Because the Court cannot assume that the LTD plan permitted delegation of the duties of the plan administrator in satisfaction of 29 U.S.C. § 1105(c), the Court will apply the *de novo* standard of review to the out-of-court decisions made by Liberty Life. *See Doe v. Travelers Ins. Co.,* 971 F.Supp. 623, 635 (D.Mass.1997).[11]

■ Plaintiff argues that Liberty Life has wrongfully denied her any-occupation benefits. She asserts that as of December 1, 1995, when her own-occupation period expired, she was totally disabled as to any occupation in satisfaction of the terms of the LTD plan.[12] Liberty Life insists that the administrative record, including statements from Plaintiff's own treating physician, supports its conclusion that Plaintiff was not

totally disabled as to *any* occupation. In analyzing the question of whether Plaintiff was totally disabled as to any occupation as of December 1, 1995, the Court will consider the entire record, including evidence that may not have been before Liberty Life. *See McLaughlin v. Reynolds,* 886 F.Supp. 902, 906 (D.Me.1995). The Court concludes that the evidence shows, without any genuine issue of material fact, that Plaintiff was not totally disabled as to any occupation on December 1, 1995, as required by the LTD plan.

Examination of the medical documentation in the record supports the Court's conclusion.[13] As of November 9, 1995, Plaintiff's physician indicated that her restrictions still included no repetitive motions, no overhead reaching, and limited lifting. *See* Global Ex. A–13. Dr. Timoney does not state that Plaintiff was totally disabled or completely restricted from working. *Id.* Subsequent office notes reveal that Dr. Timoney never listed any further restrictions for Plaintiff.[14] *See, e.g.,* Global Exs. A–14 and A–15. At his deposition, Dr. Timoney stated "I don't recall a time when I told her not to work at all." Deposition of James M. Timoney, D.O., at 25.

10. The parties have not addressed the issue of delegation under 29 U.S.C. § 1105(c) in their pleadings or supportive memoranda.

11. The Court notes that Ann Wurst, the primary decision-maker for Liberty Life, is an employee of Liberty Mutual acting as Disability Claims Manager for Liberty Life. Wurst Aff. ¶ 1. However, Defendants have asserted that she works solely for Liberty Life and that the decisions of Liberty Life are uninfluenced by Liberty Mutual. *See id.* ¶ 75 (indicating that the decision "was made solely by Liberty Life"). Therefore, the Court's concerns about improper delegation under section 1105 of ERISA are not assuaged by Wurst's official status as a Liberty Mutual employee.

12. Under the terms of the LTD plan, an insured is totally disabled as to any occupation if "the insured is unable to perform with reasonable continuity all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education; experience, age and physical and mental capacity." Group Long Term Disability Policy, Defendants' Statement as to Counts III and IV, Ex. 1.

13. Plaintiff's argument focuses largely on concerns about a conspiracy among the employees of Liberty Mutual and Liberty Life. However,

because the record fully supports a conclusion that Plaintiff was capable of sedentary, clerical work as of December 1, 1995, the Court is unpersuaded that Plaintiff's claims of a conspiracy invalidate Liberty Life's decision.

14. Defendants rely heavily upon a peer review report secured by Liberty Life during the course of Plaintiff's appeal. Based on Plaintiff's medical records, the reviewing physician concluded that:

1. As of 11/09/95, this patient had no objective clinical findings that would necessitate any limitations or restrictions.
2. No restrictions or limitations are identified.
3. The patient can perform sedentary work without restrictions.
4. The patient is not restricted.

Global Ex. A–19. The Court has some concerns about the credibility of the conclusions reached, especially those stating that Plaintiff had no restrictions or limitations whatsoever, because Plaintiff's physician, who has examined her frequently, has consistently indicated that she has certain physical restrictions. However, because there is ample evidence to indicate that Plaintiff was not totally disabled as to any occupation at the relevant time, the Court finds it unnecessary to rely upon the peer review report.

**10**

Dr. Timoney indicated that he considered Plaintiff to have work capacity during her job search in 1995. *Id.*

The medical documentation indicating that Plaintiff could still work in some capacity is supported by Plaintiff's own statements and actions. When Liberty Mutual offered Plaintiff the Call·Attendant position in June of 1995, Plaintiff did not reject it because of her physical restrictions, but rather because it was part-time, had no disability benefits, and was annually funded. Deposition of Nellie C. Davidson I ("Davidson Dep. I") at 144. Plaintiff stated that she was able to perform the functions of the Call Attendant position "with no problem." Deposition of Nellie C. Davidson II ("Davidson Dep. II") at 65. Plaintiff made this statement despite the restrictions her physician had placed upon her during that time period, which were virtually the same as the restrictions listed for her in November 1995. *See* Global Exs. A–4 and A–13. At no point in the record does Plaintiff assert that her condition changed between June and December of 1995.

Plaintiff's conduct following her termination is also indicative of her own conviction of her ability to perform the functions of certain jobs. First, Plaintiff acquired unemployment benefits as of August 13, 1995. *See* Global Ex. A–21. To be eligible for unemployment benefits, Plaintiff had to assert that she was "able and available for work" and "actively seeking work." ·26 M.R.S.A. § 1192(3).[15] Second, Plaintiff applied for a substantial number of clerical positions involving a variety of tasks such as filing, answering phones, telephone solicitation, and cashiering. Davidson Dep. I at 6–26 (indicating that Plaintiff applied for over fifteen positions between August 1995 and December 1995); *see also* Plaintiff's Statement ¶ 65 ("Between August 1995 and December 1995, Plaintiff diligently sought other suitable employment, but was unable to obtain the same."). On November 27, 1995, Plaintiff applied for a position as an office clerk in a "fast-paced office," and she stated that she believed she could do the general office work

required of the position. Davidson Dep. I at 22. Plaintiff's efforts to find employment are laudable, but the Court ·cannot ignore the ramifications of her efforts: she was able to perform the tasks associated with clerical work. Based on the medical documentation, Plaintiff's statements, and her conduct, the Court determines that the record supports Liberty Life's conclusion that Plaintiff was not totally disabled as to any occupation as of December 1, 1995. Thus, the Court will grant Defendants' Motion for Summary Judgment as to Count IV.

## IV. CONCLUSION·

Accordingly, it is **ORDERED** that Defendants' Motion as to Counts I, II, and X be, and it is hereby, **DENIED** as to Defendant Liberty Mutual and **GRANTED** as to Defendant Liberty Life. Further, it is **ORDERED** that Defendants' Motion as to Counts III and· IV be, and it is hereby, **GRANTED.**,

---

**15.** The Court may rely upon Plaintiff's representations to the Bureau of Employment Security. *See Wesley v. Monsanto Co.,* 554 F.Supp. '93, 96

n. 2 (E.D.Mo.1982), *aff'd,* 710 F.2d 490 (8th Cir.1983).